IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILL JONES | : No. 22-CV-01654 |
| Plaintiff, | : |
| v. | : |
| DAVID MILSTEEN et al., | : |
| Defendants. | : Judge Sylvia H. Rambo |

# **MEMORANDUM**

Before the court is the motion to dismiss the complaint filed by Defendants David Milsteen and the Swatara Township Police Department. (Doc. 7.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I. BACKGROUND

The complaint alleges that on May 24, 2021, Plaintiff Bill Jones was packing and moving boxes in his apartment as he prepared to move out of the unit. (Doc. 1 ¶ 6.) The work was causing some noise, and Jones' apartment door was open so that he could set things outside the door. (*Id.* ¶¶ 7, 9.)

Without warning, Defendant Officer Milsteen of the Swatara Township Police Department came to the entrance of the door, walked in, and ordered Jones to the ground. (*Id.* ¶ 10.) Jones was unable to comply due to recent surgeries and numerous physical impairments, which he attempted to explain to Milsteen. When Milsteen

1

again ordered him to the ground, Jones asked, "Why sir? My hands are in the air, and you can check if I live here. There is no reason for this." (*Id*. ¶¶ 13, 14.)

Officer Milsteen, accompanied by three unidentified officers, then tased Jones multiple times in the chest without warning, and Jones fell to the floor in pain. (*Id*. ¶ 15.) In the process, Milsteen accidently tased one of his fellow officers. (*Id*. ¶ 16.) After tasing Jones, the officers managed to identify him as the lawful resident of the apartment. (*Id*. ¶ 18.) Milsteen apologized to Jones, and the officers left the scene without making a formal arrest or charging him. (*Id*. ¶ 19.)

Sometime later, Officer Milsteen cited Jones for disorderly conduct and explained to him, "I have to give a reason why I fired my taser or I will get in trouble." (*Id*. ¶¶ 20, 21.) Mr. Jones pleaded guilty to the charge and received a 90-day suspended sentence. (*Id*. ¶ 22.)

In October 2022, Jones initiated this action by filing a complaint against Milsteen, the Swatara Township Police Department, and three John Doe officers. (Doc. 1.) Count I asserts excessive force in violation of the Fourth Amendment against Milsteen. Count II asserts failure to intervene in violation of the Fourth Amendment against the John Doe officers. The third count asserts battery in violation of Pennsylvania law.

The Swatara Township Police Department and Officer Milsteen have filed a motion to dismiss, which argues that the Swatara Township Police Department

should be dismissed because the complaint does not assert a claim against it, and that Jones' claim for excessive force should be dismissed because Officer Milsteen is entitled to qualified immunity. (Doc. 7.) The motion has been fully briefed and is ripe for review. (Doc. 8; Doc. 11; Doc. 14.)

## II.  STANDARD OF LAW

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir.

2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

As an initial matter, Defendants' motion correctly argues that the Swatara Township Police Department is entitled to dismissal. The complaint does not advance any cause of action or particular basis for liability against the Department. Nor can any Section 1983 claim be gleaned from the facts, because the complaint goes no further than to aver that the Department employed the individual defendants, and it is well-established that vicarious liability cannot be imposed "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). Likewise, the complaint does not expressly assert battery against the Department, and to the extent it can be interpreted as impliedly doing so, Jones does not respond to the Department's argument that it is immune from suit under Pennsylvania law.

*See* 42 Pa.C.S.A. § 8541. The Swatara Township Police Department will therefore be dismissed without prejudice.

Milsteen's argument that he is entitled to qualified immunity from Jones' excessive force claim is less persuasive. Qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). The doctrine requires a two-prong inquiry: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021) (internal citation omitted).

With respect to the first prong, to establish a claim for violation of the Fourth Amendment, the plaintiff must allege that the defendant's actions constituted a seizure and were unreasonable in light of the surrounding circumstances. *See Estate of Smith v. Marasco*, 318 F.3d 497, 515 (2003). "When determining the reasonableness of an allegedly excessive use of force, 'the standard is whether the police officer's 'actions were objectively reasonable in light of the facts and circumstances,'' regardless of the officer's intent or motivation." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Rivas v. City of Passaic*, 365

F.3d 181, 198 (3d Cir. 2004) (brackets and ellipses omitted)). The court considers factors which include the severity of the crime at issue; whether the suspect poses an immediate threat to officer safety; whether the suspect actively resists arrests or attempts to evade arrest by flight; physical injury to the plaintiff; the possibility that the person subject to the police action are themselves violent or dangerous; the duration of the action; whether the action takes place in the context of effectuating an arrest; the possibility that the suspect may be armed; and the number of persons with whom the police officers must contend at one time. *Id.*; *see Graham v. Connor*, 490 U.S. 386, 396 (1989).

For the second prong, the court must "define the right allegedly violated at the appropriate level of specificity ... in light of the specific context of the case," *Jefferson*, 21 F.4th at 81, and examine existing case law to determine whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is controlling authority in the relevant jurisdiction, or if a robust consensus of cases of persuasive authority in the Court of Appeals has settled the question." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (internal citations, quotation marks, and brackets omitted). Absent such case law, only "an obvious case" will defeat

qualified immunity. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (The Graham factors alone do not "create clearly established law outside an obvious case" because Graham is "cast at a high level of generality.") (citing *Plumhoff v. Rickard*, 572 U.S. 765, 779).

Here, the facts alleged by Jones show a violation of a constitutional right. The complaint alleges that Jones was non-threatening when he passively resisted police commands by raising his hands and asking why it was necessary to lie on the ground. By all appearances, Officer Milsteen was responding to a noise complaint and had no particular reason to believe that Jones, who was alone at the time, posed any risk of violence or danger or was otherwise armed. These factors strongly support finding the seizure unreasonable.

While Defendants' brief makes much of the fact that Jones pleaded guilty to disorderly conduct, that offense comprises conduct as benign as recklessly causing noise, which is in fact the only conceivable basis for the charge given the facts in the complaint. *See* 18 Pa.C.S.A 5503 ("A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."). And of course, "even if an

individual is engaged in disorderly conduct, there still could be a level of responsive force that is reasonable and a level that is 'excessive and unreasonable.'" *El*, 975 F.3d at 339 (quoting *Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997)). There is no reason to believe from the allegations in the complaint that proving excessive force would implicitly undermine Jones' conviction, and the apparent non-serious nature of the disorderly conduct offense serves to underscore law enforcement's allegedly disproportionate response.

To be sure, the short duration of the encounter and Jones' apparent lack of physical injury cuts against unreasonableness, as does Milsteen's lack of definitive knowledge at the time that Jones was unarmed. Weighing these considerations in light of the surrounding circumstances however—including the severity of the crime at issue, the want of active resistance or potential danger posed by Jones, and the lack of immediate threat to officer safety—creates a plausible inference that Milsteen's use of force was objectively unreasonable. The complaint therefore adequately pleads a Fourth Amendment violation.

Finally, on the second prong of the qualified immunity analysis, Jones' right to be free from excessive force was clearly established at the time of the violation, because a robust consensus of persuasive Court of Appeals authority has settled the question that an unarmed individual who is not suspected of a serious crime—

including one who passively resists the police—has a clearly established right not to be subjected to non-trivial force.

In *El*, the Third Circuit concluded that a police officer was not entitled to summary judgment based on qualified immunity, where the officer grabbed an unarmed man suspected of a marijuana offense by the wrist and neck and slammed him against the wall and pavement, after the man had gesticulated and taken two steps toward officers. *El v. City of Pittsburgh,* 975 F.3d at 342. Relying on a robust consensus of persuasive authority from the Courts of Appeals, the Third Circuit held that "an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police" has a clearly established right not to be subjected to non-trivial force such as being grabbed, dragged, or taken down. *Id.* at 340 (citing *Deville v. Marcantel*, 567 F.3d 156, 161 (5th Cir. 2009) (per curiam) (no qualified immunity where officers conducting a traffic stop pulled the plaintiff out of her car, threw her up against the vehicle, and handcuffed her when she had argued with officers, rolled up her windows, and refused to step out); *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 683–84 (6th Cir. 2006) (no qualified immunity where officers pepper sprayed, struck with a stick, and took a knee to the back of a misdemeanant who hid to evade arrest and disobeyed instructions to come out); *Montoya v. City of Flandreau*, 669 F.3d 867, 869 (8th Cir. 2012) (no qualified immunity where an officer responding to a domestic dispute took

a woman to the ground by sweeping her legs out from under her when she had made a fist and stepped toward the other disputant); *Thornton v. City of Macon*, 132 F.3d 1395, 1398 (11th Cir. 1998) (per curiam) (no qualified immunity where officers, while retrieving a woman's property from the home of her former co-habitant, threw him to the floor, handcuffed him, and dragged him outside)).

While *El* is distinguishable from the facts at hand—police knew before applying force in that case that the suspect did not have a weapon in his pockets— the caselaw relied upon by the Third Circuit for denying qualified immunity applies with equal force here. As in those sister Circuit cases, police in this case had not yet searched Jones, but nonetheless had no particular reason to believe he was armed or dangerous or had committed a serious crime. Accepting the complaint's allegations as true, Jones posed no concievable threat to law enforcement during the encounter, and he was suspected at most of causing too much noise. Under the circumstances, Jones had a clearly established right, while he was stationary with his hands in the air, to be free from the use of excessive force by police. Employing a taser to bring him to the ground was a disproportionate and unreasonable response to the situation as made clear by a robust consensus of persuasive authority. *See Montoya*, 669 F.3d at 873 ("[T]he contours of the right at issue were sufficiently clear to inform a reasonable officer in Officer Hooper's position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was

not threatening anyone, was not actively resisting arrest, and was not attempting to flee."); *Thornton*, 132 F.3d at 140 ("[N]either Thornton nor Cravey was suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest. Yet, on the facts viewed in the light most favorable to the plaintiffs, the officers used force in arresting both Thornton and Cravey. The officers grabbed Thornton and wrestled him to the ground, and threw Cravey on the hood of one of the patrol cars before handcuffing him."); *Shreve*, 453 F.3d at 688 ("people who pose no safety risk to the police" have a clearly established right "to be free from gratuitous violence during arrest"). The court cannot conclude, at least at this stage, that Milsteen is entitled to qualified immunity.[1]

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted in part and denied in part. An appropriate order shall follow.

Dated: July 27, 2023.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

---

[1] Defendants' motion does not substantively argue that Jones' state law battery claim must be dismissed under Pennsylvania's immunity doctrine, and its contention that qualified immunity bars the claim is without merit. *See El*, 975 F.3d at 334 n3 ("Had the officers raised qualified immunity as a defense to the state-law claims, the argument would have failed, because qualified immunity is a defense only to violations of federal law under § 1983. Immunity from state law claims is governed by the state's immunity doctrine.").

11